**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-395-GMS |
| | ) | |
| DOCUMOTION RESEARCH, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## DOCUMOTION RESEARCH INC.'S OPENING CLAIM CONSTRUCTION BRIEF

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant
Documotion Research, Inc.*

OF COUNSEL:

Lester J. Savit
ONE LLP
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
(949) 502-2870

John E. Lord
ONE LLP
9301 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90210
(310) 866-5157

Dated: May 14, 2015

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     DISPUTED CLAIM TERMS AND PHRASES.............................................................1

     A.    The Blank '811 Patent ...............................................................................1

         1.    (a) a plurality of discrete adhesive patches aligned and spaced apart longitudinally in a single column along a running axis of the web (claim 1); and, ....................................................................1

               (b) a plurality of noncontiguous adhesive patches aligned in and spaced longitudinally in a single column (claim 22). ........................................1

         2.    single column … in a minor area of said back surface (claim 1) ...........3

         3.    with the remaining major area of said back surface being devoid of adhesive (claim 1) ..................................................................4

         4.    adhesive-free major area (claim 2) ........................................................5

         5.    devoid of adhesive (claim 1).................................................................6

         6.    said labels extend transversely across said web in cantilever from said adhesive (claim 2)..................................................................6

         7.    reducing surface area exposure along said feed path (claim 22) ...........7

     B.    The Blank '264 Patent ...............................................................................7

         1.    an identically repeating series of differently sized adhesive patches… aligned in a column along said web (claim 1) ......................7

         2.    and differently sized adhesive free zones therebetween [sic] aligned in a column along said web  (claim 1) .......................................8

         3.    said adhesive patches vary in width between leading and trailing edges thereof along said running axis (claim 2) .....................................9

         4.    index marks (claim 4) .............................................................................9

     C.    The Roth '184 Patent ................................................................................9

         1.    the adhesive layer is variably patterned (claim 1) .................................9

2.      to include areas with adhesive and areas without adhesive to vary locations of contact between the adhesive layer and a cutting mechanism making variably located lateral cuts across width of the substrate (claim 1) ..........................................11

3.      variably located lateral cuts (claim 1) ....................................................13

4.      the areas without adhesive comprise adhesive free lanes arranged vertically and/or horizontally within the adhesive layer (claim 3) .....................................................................................14

5.      (a)  the areas with adhesive comprise elongated diamond shapes stretching vertically across the second side (claim 4); and, (b) the adhesive shape includes an elongated diamond shape ('190 patent, claims 9 and 16)..............................................................14

6.      repeat length (claim 6) ..........................................................................15

7.      a label configured to be custom cut from the roll of the media by a thermal printer at custom lengths (claim 14).....................16

8.      the front portion displaying information for a transaction (claim 14) ...........................................................................................17

D.      The Roth '190 Patent ........................................................................17

1.      (a)  pattern for adhesive material (claim 1); and (b)  adhesive pattern (claims 4 and 11)...............................................17

2.      repeat distance (claims 1, 4 and 11)......................................................18

3.      providing the pattern and the repeat distance to a printing press or a coater (claim 1)....................................................................18

4.      providing the pattern and the repeat distance to a printing press or a coater, wherein the printing press or the coater (i) coats a first side of a web of media material with thermally sensitive inks (claim 1) ........................................................................19

5.      to assist in reducing any buildup of adhesive material on a cutting mechanism when the cutting mechanism subsequently cuts laterally across the media web (claim 1) .......................................19

6.      is of a shape which assists in evenly distributing any buildup of adhesive material on a surface of a printer (claim 11) .....................20

III.	CONCLUSION ..........................................................................................................20

I.     **INTRODUCTION**

Plaintiff NCR Corporation ("NCR") asserts that Defendant Documotion Research, Inc., ("DRI") infringes four patents:  United States Patent No. 7,588,811 ("the Blank '811 patent"); United States Patent No. 7,820,264 ("the Blank '264 patent"); United States Patent No. 8,537,184 ("the Roth '184 patent"); and United States Patent No. 8,711,190 ("the Roth '190 patent").  The first three patents have different disclosures and do not claim priority from earlier applications.  The fourth, the '190 patent, is a divisional of the '184 patent and contains the same disclosure.

The '811 patent describes a roll of labels that have adhesive patches aligned in a single column along one edge of the label with gaps for cutting between the patches to create individual labels.  The '264 patent contemplates a label with a column of differently-sized adhesive patches and gaps between the patches to position the patches between the printer components when the printer is idle.  The '184 patent eliminates the need for the gap and proposes instead an adhesive pattern that spreads contact of the adhesive with different portions of the cutting mechanism over several cuts.  The '190 patent claims a method of making a label including coating steps.  NCR and DRI dispute the constructions of language appearing in each of the asserted patents.  Each term or phrase is separately considered below.

II.    **DISPUTED CLAIM TERMS AND PHRASES**

   A.  **The Blank '811 Patent**

      1.  (a) **a plurality of discrete adhesive patches aligned and spaced apart longitudinally in a single column along a running axis of the web**(claim 1); and,

          (b) **a plurality of noncontiguous adhesive patches aligned in and spaced longitudinally in a single column**(claim 22).

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Two or more patches of adhesive aligned and spaced apart in only one column, and not having another column of adhesive patches. |

The asserted claims recite a **single** column of adhesive patches.[1]  Col. 6, ln. 11 (A10); col. 7, ln. 55 (A11.)  The English language definitions of the word "single" is "one and only one" and "not having or including another: only one."  The New Lexicon Webster's Dictionary, Lexicon Publications, Inc., 1987 ("Webster's Dictionary") at 928 (A1424); Merriam-Webster internet dictionary, Encyclopedia Britannica Company 2015 (A1425).  The '811 patent specification is consistent with this definition because it discloses only labels containing one column of adhesive patches, and shows no embodiments with more than one.  See Figs. 1-8 (A-2-7); col. 3, lns 20-31, 41-50 (A9); col. 4, lns. 5-10 (A9); col. 5, lns. 1-20 (A10).

The two independent claims in the original patent application refer only to "a plurality of adhesive patches aligned in a column …." *Id.*  The word "single" was added to application claim 19 between "a" and "column" to describe adhesive patches as being arranged in "a *single* column."  Amendment, January 13, 2006, at 4 (A429) (emphasis added).  NCR subsequently argued patentability of claim 19 over the Mertens prior art reference on the basis that the "figures 5 & 7 [of Mertens] applied by the examiner have *two* bands 94, 94 a, b …." *Id.* at 7 (A432) (emphasis added); see also, Figs. 5 & 7 of Mertens (A1456, A1458).  Hence, NCR argued that the phrase "a single column" excluded two columns.

During later prosecution, NCR again argued a construction of the added word "single" that excluded prior art disclosures of two or more columns of adhesive.  "Claim 31 recites *a single column of the adhesive patches* 38 along only one edge of the web; and the figure 2

---

[1] NCR asserts independent claims 1 and 22, and dependent claims 2 and 23 of the '811 patent.  Plaintiff NCR Corporation's First Supplemental Identification of Accused Products and Asserted Claims Pursuant to Paragraph 4(A) of the Default Standard for Discovery, served February 2, 2015.

embodiment of Slagsvol clearly shows *two continuous adhesive strips 2 b, c. Two does not anticipate one*." Fourth Amendment, October 5, 2006, at 8 (A343); see also Slagsvol's disclosure of two adhesive strips, items 2b & 2c, described at col. 2, lns. 49-52 (A1495) and Fig. 2 (A1494) (emphasis added).[2]

Similarly, NCR distinguished the claimed "single-column configuration" from the Smith prior art reference's two column arrangement.

> Both independent claims 1 and 19 recite the single column configuration of the adhesive on the label roll for the many advantages in the specification.
>
> \*        \*        \*        \*
>
> It is quite clear that Smith expressly illustrates, expressly discloses, and, indeed, expressly recites in claim 1 a linerless label in which *two strips of adhesive* 34, 35 are disposed along the opposite edges and are essential to the performance of the labels.

Fourth Amendment at 12 (A347) (emphasis added); see also Smith's disclosure of two strips of adhesive 34 and 35, col. 3, ln. 56 to col. 4, ln. 6 (A1486) and Fig. 2 (A1484).

Hence, DRI's proposed construction that limits the term "single" to one and only one column of adhesive patches is consistent with the English language definition of "single," the '811 patent specification, and NCR's use of the term "single" during prosecution to exclude two columns, and it should be adopted.

2. **single column … in a minor area of said back surface** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Single column…in an area comprising less than half (i.e. less than 50%) of the back surface | The column of adhesive is located in an area that is less than one side of the longitudinal center line of the web's back surface. |

The constructions of this phrase and the following phrase are addressed together below.

---

[2] NCR added independent claim 31 to its application in NCR's Second Amendment, March 21, 2006, at 6 (A403), and described the claim as "being derived from independent claims 1 & 19." Second Amendment at 13 (A410).

3. **with the remaining major area of said back surface being devoid of adhesive** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Areas of the back surface that are free of adhesive which add up to more than half (i.e. more than 50%) of the back surface | The web's back surface has an area that is more than one half of the back surface, opposite of the longitudinal center line from the minor area. |

Claim 1 contains references to "a minor area" and a "remaining major area." The English language definitions of the words minor and major confirms the complementary relationship of those terms. The definition of "minor" is "less in importance, size etc. than something else." Webster's Dictionary at 637 (A1434). In contrast, the definition of "major" is "greater in importance, size etc. than something else." *Id*. at 601 (A1438). Claim 1, therefore, recites a back surface that is divided into two areas, one that is smaller than the other. Col. 6, lns. 9-14 (A10).

The claim requires that the adhesive column be located in the smaller area, and that no adhesive be present in the ***remaining major area***. *Id.* The specification of the '811 patent clearly shows the column of adhesive patches 38 well within the longitudinal center line or "running axis" 32 of the web's back surface. Figs. 3-6 and 8 (A4-7). The patent explains:

> Instead of providing full surface coverage of the adhesive on the back surface 36 illustrated in FIG. 4, the adhesive is provided solely in small patches in a relatively minor area of the back surface, with the remaining major area of the back surface being devoid of adhesive.

Col. 3, lns. 32-36 (A9). Isolating the column of adhesive patches in a smaller area of the web, "leav[es] the majority of the remaining web adhesive-free." Col. 5, lns. 9-10 (A10). See also Fig. 8 (A7).



A particular advantage of this adhesive configuration is that most of the individual label 12 as illustrated in FIG. 1 is without adhesive and permits ready handling thereof, even by users wearing gloves, with little chance of grabbing the adhesive patch itself. The isolated adhesive patch may then be used for bonding the entire label to the package 14, in a cantilever fashion for example, for permitting grasping thereof for removal and repositioning of the label if desired.

Col. 4, lns. 11-19 (A9). Thus, the patent explains that locating the adhesive column in a smaller

area of the back surface leaves the larger area to be grasped without risk of touching the glue.

Hence, the minor area is the smaller area, i.e., less than one side of the center line (or running

axis) and the remaining major area includes at least the other half of the web on the other side of

the running axis.

4.   **adhesive-free major area** (claim 2)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Areas of the back surface that are free of adhesive which add up to more than half (i.e. more than 50%) of the back surface | Plain and ordinary meaning. |

This phrase appears in dependent claim 2 as "*said* adhesive-free major area."  Col. 6, lns. 23-24 (A10) (emphasis added).  The word "said" indicates that the term "adhesive-free major area" refers to the previously introduced claim feature, "remaining major area … devoid of adhesive" found in claim 1, upon which claim 2 depends.  Thus, the "adhesive-free major area" phrase of claim 2 should be construed the same way as "remaining major area" is construed in the preceding Section II.A(3).

5. **devoid of adhesive** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Utterly lacking or completely without adhesive. |

DRI seeks construction of this phrase to assure that the jury understands that "devoid" emphasizes the absence of adhesive.  The dictionary definition of "devoid" is "lacking in, completely without."  Webster's Dictionary at 262 (A1442).  As discussed above, all the embodiments shown in the '811 patent show an area that makes up more than one-half of the back surface as completely without adhesive.  For example, col. 3, lns. 32-36 (A9); col. 4, lns. 11-19 (A9); Figs. 1-8 (A1-7).  Hence, the jury should be instructed that the phrase "devoid of adhesive" is properly construed as "completely without adhesive."

6. **said labels extend transversely across said web in cantilever from said adhesive** (claim 2)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| the labels extend from the adhesive patches such that the adhesive is biased more towards one lateral edge of the web than the other edge from said adhesive column to permit hand grasping of said adhesive-free major area | Indefinite[3]; alternatively, at least the portion of the web across the center-line from the single column is free from adhesive to allow the label to be held without contacting adhesive. |

---

[3] DRI acknowledges that the Court's practice is not to decide indefiniteness issues in the context of claim construction.  DRI contends that certain terms or phrases submitted for construction render one or more claims invalid as indefinite. DRI reserves the right to assert indefiniteness at a later time including, but not limited to, any permitted summary judgment motions

This language requires that the adhesive patches be applied to an object so that the portion of the web without adhesive projects from the surface and is available to be grasped by a hand.  The word "transverse" means "crossing from side-to-side or lying across or crosswise." Webster's Dictionary at 1050 (A1446).  The definition of "cantilever" is "a horizontal part projecting beyond a pier etc., which supports it at one end only." *Id.* at 144  (A1450).   Hence, the claim requires the portion of the label containing the adhesive to be attached to an object, and the portion without the adhesive to project beyond the object for grasping by a hand.

7.  **reducing surface area exposure along said feed path (claim 22)**

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Having areas with and without adhesive to reduce surface area exposure | Indefinite; alternatively, the single column of adhesive patches is located on one side of the longitudinal center of the web surface, and the other side of the longitudinal center contains no adhesive. |

This language fails to provide a reference with respect to the reduction of surface area exposure – there is no way to determine whether surface area is reduced because the reader is not informed as to the starting point. The patent discloses "a minor area" in which the adhesive is located, and "a remaining major area" in which adhesive is completely lacking.  See discussion in Section II.A(3) above.  To the extent the phrase "reducing surface area exposure" can be interpreted at all, it refers to the "remaining major area" in which there is no adhesive. *Id.*  The printer feedpath is not exposed to adhesive on a majority of the back surface if the major area of the back surface does not contain any adhesive.

B.  **The Blank '264 Patent**

1.  **an identically repeating series of differently sized adhesive patches… aligned in a column along said web** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| An identically repeating series of adhesive | Indefinite; alternatively, the adhesive patches |

| patches of different sizes relative to each other…aligned in a column along said web | within a single aligned column along the longitudinal axis of the web have a repeating pattern with at least two patches in that column having a different size from one another. |
|---|---|

The constructions of this phrase and the following phrase are addressed together below.

**2. and differently sized adhesive free zones therebetween [sic] aligned in a column along said web** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| And adhesive free zones of different sizes relative to each other between the adhesive patches aligned in a column along said web | Indefinite; alternatively, the adhesive patches aligned in the same column have at least two different distances of adhesive free spaces separating the patches in that column. |

The question presented here is whether the claim requires the differently sized adhesive patches, and differently sized adhesive free zones, to be in the same column, or whether the language can be met if the different sized patches and spaces are located in different columns. The patent discloses a series of adhesive patches 44 that are lined up, single file, along the running axis, as shown in the figures by arrow 36. Col. 5, lns. 26-41 (A495); Figs. 3-8 (A490-92). Similarly, the adhesive free zones 48 between the patches 44 have different lengths, i.e., the distances between the patches in the same row are different. *Id.*

> In the exemplary embodiment illustrated in FIG. 4 [A490], the adhesive free zones 48 are sized and located along the column of adhesive patches to match the corresponding longitudinal spacing of the various feedpath components found in the associated printer over which the adhesive will travel during operation. The size or length of the free zones 48 are selected within suitable manufacturing and operational tolerances to prevent contact of the adjacent adhesive with the feedpath components during idle operation.

Col. 6, lns. 46-54 (A495). See also col. 6., lns. 5-8 (A490) ("Correspondingly, the series of adhesive patches 44 are distributed between the various feedpath components during idle operation and are suspended remotely therefrom without contact therewith.").

As shown in Figs. 3 and 4, the location of the printer components relative to the longitudinal dimension of the web is irregular. (A490.) In order to accomplish the alignment of

adhesive-free zones and printer components described above, the sizes of the patches and the

zones have to be irregular – to correspond to the design of a particular printer.  To accomplish

irregular spacing of the adhesive free zones, the differently sized adhesive patches and

differently sized adhesive free zones must be in the same column.  Thus, the only interpretation

of the claim language that makes sense is that the differently sized patches and differently sized

adhesive free zones are lined up, single file, in the same column.

> **3.  said adhesive patches vary in width between leading and trailing edges thereof along said running axis** (claim 2)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning Alternatively: the patches are not of uniform width between the leading and trailing edges thereof along said running axis | Each adhesive patch has a leading edge that is different from the shape and/or size of the trailing edge of the adhesive patch such that one edge is wider than the other edge. |

This patent refers to "varying width of the leading and trailing edges of the adhesive

patches."  Col. 7, lns. 30-31 (A496).  Embodiments with leading and trailing edges having

different widths are shown in Figs. 5-8.  (A491-92.)  DRI's construction captures that meaning.

> **4.  index marks** (claim 4)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| Marks or other indicator intended to be read by an optical or other sensor | Plain and ordinary meaning. |

NCR's proposed construction should be rejected because it improperly substitutes a

subjective "intent" separate from a structural limitation.  The patent shows index marks 42 in

Figs. 3-8 (A490-92), and refers to them as "short black marks."  Col. 3, lns. 56-59 (A494).  No

additional construction is needed.

> **C.  The Roth '184 Patent**

> **1.  the adhesive layer is variably patterned** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| patterned such that the cutting blade surface may come into contact with adhesive at different locations over time as the cutting blade makes repetitive cuts | Indefinite; alternatively, a wide web of media containing multiple, different patterns, or a single pattern that has a variable repeat length. |

The word "variably" modifies and narrows the term "patterned" in claim 1. Col. 9, ln. 63 (A1148). In contrast to claim 1's "variably patterned," claim 14, uses the opposite, "repeating pattern." Col. 10, ln. 52 (A1148). Indeed, the specification identifies specific adhesive layers as having patterns that are "variable." Fig. 1H (A1140) shows "a wide web of patterned adhesive media having a multitude of different adhesive patterns thereon." Col. 7, lns. 8-9 (A1147). The patent describes the patterns in Fig. 1H by several forms of the word "variably," including the words "various," "varied" and "variations."



**VARIABLE PATTERNS**

**FIG. 1H**

> As shown in FIG. 1H, ***various*** adhesive patterns may be produced utilizing [sic] having similar, or different, overall elemental shapes. For example, the left four patterns all include ***variations*** of diamond shaped adhesive. Likewise, the right two patterns both include ***variations*** of circular shaped adhesive. In the left four configurations, coverage of the adhesive pattern is ***varied*** via ***varying*** the uncoated media portion within the region of the media coated with adhesive (e.g., within the overall width of the adhesive band), as well as via ***varying*** the size of the region itself (e.g., the width of the adhesive with respect to the width of the web-to-be-slit portion thereof). The right two configurations illustrate ***variations*** in coverage with respect to the width of the adhesive band as compared to the width of the web/media.

Col. 7, lns. 18-31 (A1147) (emphasis added). Thus, according to the '184 patent specification, a

"variably patterned adhesive layer" is an adhesive layer containing multiple, different patterns.

The '184 patent also describes a contiguous pattern that has a variable pattern.

Specifically, Fig. 1C shows a pattern in the right-hand column in which the repeat length varies

along the longitudinal dimension, i.e., from top to bottom. (A1135.)

> FIG. 1C illustrates ***various variations*** in the repeat length of an adhesive pattern. For example, the left pattern in FIG. 1C shows a short repeat length. The center pattern illustrates an adhesive pattern with modified, increased repeat length. Finally, the right pattern illustrates a further modified, increased repeat length…. Note depending on the embodiment, the repeat length may be ***varied*** (including increased) without varying the overall nature of the pattern…. ***Varying*** the repeat length with respect to an expected cut length/location (e.g., long repeat lengths for typically short receipts) can avoid repeatedly cutting through the same location of a patterned adhesive, and thereby avoid localized/heavy adhesive buildup.

Col. 4, lns. 59 – col. 5, ln. 4 (A1145-46) (emphasis added). See also, col. 4, lns. 49-58 (A1145)

("it may be desirable to avoid the repeat length of the adhesive pattern the same or approximately

the same as the length of the typical label/receipt…. This problem can be avoided by going to …

randomized adhesive patterns."). Hence, the phrase "variably patterned adhesive layer" is

properly construed as a layer of adhesive having multiple, different patterns, as shown in Fig.

1H, or a pattern with a variable repeat length, as shown in Fig. 1C.

2. **to include areas with adhesive and areas without adhesive to vary locations of contact between the adhesive layer and a cutting mechanism making variably located lateral cuts across width of the substrate** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| to include areas with adhesive and areas without adhesive to provide different transverse points of contact between the adhesive layer and a cutting mechanism making lateral cuts across the width of the substrate that occur at different locations relative to a repeat length of the adhesive pattern | Indefinite; alternatively, the pattern provides (1) at least some adhesive and some adhesive free areas at every widthwise cut by the cutting mechanism, and (2) each portion of the cutting mechanism that contacts an adhesive free area will contact adhesive when the location of the cutting mechanism is varied relative to the running axis of the substrate. |

The '184 patent is directed to "custom cut" labels, i.e., a roll that can be cut at random locations to create custom length labels, rather than requiring adhesive-free spaces between adhesive patches to avoid contacting the cutting mechanism with adhesive. See col. 1, lns. 32-41 (A1144); col. 8, lns. 9-15 (A1147) ("A label may be cut from the roll of media … at custom lengths."). According to the patent, custom cutting through the adhesive can be accomplished by spreading the cutting mechanism's contact with the adhesive over many cuts.

> [T]he pattern and or the cutting location through the media should spread the adhesive contact across as much of the cutter as possible (e.g., over time) to minimize deposition in localized regions which may adversely affect subsequent cutter performance and/or media feed (resulting in, for example, media mis-feeds and/or jams).

Col. 4, lns. 1-6 (A1145). Thus, the adhesive is provided in a pattern such that the cutting mechanism not only contacts some areas of adhesive and some areas without adhesive, but that portions of the cutting mechanism that did not contact adhesive in one cut will contact adhesive during later, random cuts.

The claim 1 language is consistent with this purported benefit. It includes two parameters that must vary. First, the width-wise areas of adhesive and no adhesive must vary along the longitudinal axis. In other words, each cut has to contact some areas of adhesive and also some areas without adhesive. Next, later cuts by the cutting mechanism again cut through areas of adhesive and adhesive-free areas, but at different points of the cutting mechanism. Parts

of the cutting mechanism that missed adhesive during the first cut, would subsequently contact adhesive in later, random custom cuts.  According to the patent, this spreads the adhesive contact across the cutting mechanism over time.

DRI's proposed construction perfectly encompasses the awkward claim language.  First, the claim recites, "the pattern contains areas with adhesive and areas without adhesive."  This means that each cut will contact some areas of adhesive and some adhesive-free areas.  See Figs. 1A-1C, 1G-1H (A1133-35; A1139-40).  Second, the language "to vary locations of contact between the adhesive layer and a cutting mechanism making variably located lateral cuts across the width of the substrate," means the portions of the cutting mechanism that avoided adhesive during one cut will contact adhesive in a subsequent cut.  Hence, DRI's proposed construction is the proper construction and should be adopted by the Court.

3.  **variably located lateral cuts** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| lateral cuts that occur at different locations relative to a repeat length of the adhesive pattern | lateral cuts that occur randomly along the running axis of the substrate over time |

The preceding section discussed the construction of these words in the context of the longer claim phrase considered in that section.  As discussed above, custom cuts are custom length cuts that are governed by the desired label length for a specific transaction, i.e., the cut does not have to occur at an adhesive free gap.  Hence, the location of each cut is random with respect to the location along the pattern of adhesive.  NCR's proposed "different locations" is an incorrect construction of "variably located" in the context of the specification.

4. **the areas without adhesive comprise adhesive free lanes arranged vertically and/or horizontally within the adhesive layer** (claim 3)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | The adhesive layer in a wide web additionally contains vertical or horizontal lanes that do not contain adhesive. |

The patent describes two different widths of media, a wide web or log roll that comes off the printing press or coater, and a narrow width product that is used in the thermo printer.  Fig. 1A (A1133) shows a pattern "provided on multiple portions of a wide web for, for example, later slitting into a final, narrow width products as illustrated in FIG. 1B [A1134]."  Col. 3, lns. 19-23 (A1145).  The patent refers to the areas between the individual patterns of Fig. 1A as "adhesive-free lanes."  *Id.* at lns. 27-40.  The purpose for the lanes is to allow a slitter to divide the wide web into narrower roll product suitable for use in a thermal printer. *Id.*; see also, col. 7, lns. 11-17 (A1147) ("individual (e.g., six in the illustrated embodiment) narrow web products may be slit from the wide web [shown in Fig. 1H]….").  DRI's proposed construction is necessary to clarify for the jury that the adhesive-free lanes are located between the patterns on a wide web, and are not the adhesive free areas of the patterns themselves.

5. (a) **the areas with adhesive comprise elongated diamond shapes stretching vertically across the second side** (claim 4)**; and,**
(b) **the adhesive shape includes an elongated diamond shape** ('190 patent, claims 9 and 16).

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | The adhesive layer is made up of diamond-shaped patches that have been stretched along the top to bottom axis between the top and bottom points relative to the side-to-side points, or stretched along the side-to-side axis between the side points relative to the top and bottom points. |

The '184 and '190 patents describe patterns in Figs. 1A-1B ('184 patent, A1133-34; '190 patent, A1297-98) as containing "elongated diamond shapes." Col. 3, lns. 6-26[4] ('184 patent, A1145; '190 patent, A1309). The shapes are diamonds with the top to bottom points stretched along the longitudinal axis. *Id*. No other shapes are described as elongated diamonds.[5] Hence, consistent with the disclosures in the patents, the term "elongated diamond shape" should be properly construed as a diamond shape that has been stretched along the longitudinal axis.

6. **repeat length** (claim 6)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| distance along the web in which the adhesive pattern is repeated | The shortest distance along the web that includes the repeated unit in the pattern. |

The '184 patent specifically identifies the "repeat length" of the pattern shown in Fig. 1B (A1134) as the length of one of the repeating elongated diamond shaped units. Col. 4, lns. 16-19 (A1145). This repeat length is identified in the specification and in Fig. 1B as 202 mm. *Id*. As shown in Fig. 1B, this is the shortest distance incorporating the portion of the pattern that repeats. (A1134.) The term "repeat length" does not have multiple values. In Fig. 1B, for example, the pattern also repeats every 404 mm, or 606 mm, or 808 mm. However, neither the specification nor Fig. 1B identifies the repeat length as also being 404 mm, 606 mm or 808 mm – those are merely multiples of the length of the repeat length, i.e., shortest unit.

There is also a functional reason why the term "repeat length" cannot be twice, thrice or other multiples of the length of the shortest repeating unit. The patent states that "it may be desirable to avoid having the *repeat length* … the same or approximately the same as the length of the label receipt…." Col. 4, lns. 49-51 (A1145). To do so "would cause the same part of the

---

[4] Where separate patent citations are not provided in this section, the citation applies for both the '184 and '190 patents.
[5] The patents refer to shapes shown in the left four patterns of FIG. 1H as "variations of diamond shaped adhesive," but not as elongated diamond shapes. '184 patent, col. 7, lns. 18-21 (A1147); '190 patent, col. 7, lns. 27-30 (A1311).

cutter to pass through adhesive at every cut, potentially, depending on the embodiment, negating some of the benefits of the patterned adhesive." *Id*. at lns. 53-56.   According to the patent, "the problem can be avoided by going to long *repeat lengths*."   *Id*. at lns. 56-58.  Here, the term "repeat length" only makes sense if it means the shortest distance encompassing the repeated unit.  If NCR's open-ended definition is adopted, every pattern, even those with a very short repeating unit, would have a "long repeat length" comprised of multiples of the shortest unit.  Hence, the proper construction of "repeat length" is limited to the *shortest* repeated distance.

       7. **a label configured to be custom cut from the roll of the media by a thermal printer at custom lengths** (claim 14)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| a label configured to be cut at different, specified locations from the roll of the media by a thermal printer at different, specified lengths | a label containing a continuous pattern of adhesive that is configured for the label to be cut at any location along the web to form a label of any length, and does not contain adhesive free spaces or index mark for cutting the media. |

The dispute here revolves around the whether "custom cut" means that the label is configured to be cut "at any location along the web," which is DRI's view, or whether the feature requires only that the cuts occur at "different, specified lengths."  The '184 patent purports to provide an adhesive pattern that is configured to allow the cutting mechanism to cut through the adhesive.  See, for example, col. 2, lns. 56-67 (A1144) ("Each label may be configured to be custom cut at a custom length from a web or roll …. [T]he patterned adhesive may be configured in such a manner so as to reduce and/or vary the contact between the cutting mechanism and the adhesive material."), and col. 3, lns. 46-47 (A1145) ("As shown [in Fig. 1B], the three cuts [through adhesive] would result in three, varied/custom length linerless labels.").

The "custom cut" labels are different from labels that are configured to be cut in specific areas that do not have adhesive.  In non-custom cut configurations, the label can be cut at

different specified locations and different lengths, but cannot be cut at *any* desired length. This

configuration is shown in Figs. 5 & 6 (A6) of the '811 patent, and includes adhesive free gaps

between the adhesive patches 38 and index marks 42 for detection by a sensor 30 that

coordinates with the cutting blade 28 to cut the web in the gaps. '811 patent, col. 4, lns. 46-67

(A9). Hence, "a label configured to be custom cut" contains a continuous pattern configured to

be cut at any location along the web, and does not contain adhesive free spaces or index marks

for cutting the media into individual labels.

8. **the front portion displaying information for a transaction** (claim 14)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | The label has been printed with information that is visually displayed. |

This claim language requires that the label be printed with information that is visually

displayed. Col. 1, ln. 65-col. 2, ln. 5 (A1144); See also, col. 8, lns. 15-19 (A1147).

**D. The Roth '190 Patent**

1. (a) **pattern for adhesive material** (claim 1); and,
   (b) **adhesive pattern** (claims 4 and 11).

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Configuration of adhesive wherein the web comprises a plurality of transverse areas with and without adhesive | Plain and ordinary meaning. |

The '190 patent uses the plain and ordinary meaning of the word "pattern." NCR's

proposed construction injects broad (and incorrect) concepts of "a plurality of transverse areas

with and without adhesive" not incorporated into the word "pattern." Indeed, NCR's proposed

construction is inconsistent with the disclosure of "adhesive patterns" that do not have any

transverse areas without adhesive. See Figs. 1A-1C, 1F-1H (A1297-99, A1302-04). NCR's

proposed construction, therefore, should be rejected as inconsistent with NCR's own use of the

term "pattern" in the '190 patent, and the terms should be construed according to their plain and ordinary meaning.

>    2. **repeat distance** (claims 1, 4 and 11)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| length along the web in which the adhesive pattern is repeated | The shortest distance along the web that includes the repeated unit in the pattern. |

The construction of "repeat distance" is the same as the construction of "repeat length" discussed above in Section II.C(6) above.

>    3. **providing the pattern and the repeat distance to a printing press or a coater** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | Electronically communicating the pattern and repeat distance to a printing press or coater. |

Claim 1 is directed to a method that includes the steps of acquiring a pattern, determining a repeat distance, and providing the pattern and repeat distance to a printing press or a coater, which engages in certain coating steps. Col. 9, ln. 65 –col. 10, ln. 10 (A1312). The process is described with reference to a flow chart. Col. 8, ln. 64 - col.9, ln. 40 (A1311-12); Fig. 3 (A1306). The method is described as being "implemented in one or more machines adapted to process print media." Col. 8, ln. 67 – col. 9, ln. 1 (A1311-12). For example, the pattern is "preconfigured into the machine" or is "acquired from a database based on the identity of the customer, type of roll or web of media, end use(s) … and the like." Col. 9, lns. 7-9 (A1312). See also, col. 9, lns. 15-19 (A1312) ("[T]he repeat distance can also be a machine configuration parameter, a profile for a customer…, a parameter based on end use …, and the like.). Hence, the pattern and repeat distance are contemplated to be electronic information electronically communicated to the printing press or coater.

4.  **providing the pattern and the repeat distance to a printing press or a coater, wherein the printing press or the coater (i) coats a first side of a web of media material with thermally sensitive inks** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | The printing press or coater that receives the pattern and repeat distance is the same printing press or coater that conducts the coating steps. |

The only disputed issue is whether the twice repeated phrase "printing press or coater" refers to the same printing press or coater. This issue is resolved by analysis of the antecedent basis for the second use of the phrase. The phrase is first introduced to the claim in the method step, "providing the pattern and repeat distance to *a printing press* or *a coater*." Col. 10, lns. 1-2 (A1312) (emphasis added). The use of "a" before "printing press" and again before "coater" indicates that those elements are new to the claim. However, when those words appear next, the claim recites "*the printing press*" and "*the coater*." *Id.* at ln. 2. (emphasis added). The use of "the" indicates that those elements are not new, but were previously introduced to the claim, i.e., the second appearance of "printing press" and of "coater" refers to the same "printing press" and "coater" that was introduced earlier in the claim. According to the claim language itself, the printing press or coater that received the pattern and repeat distance is the same printing press or coater that "coats the first side of a web of media material with thermally sensitive inks." Id. at lns. 3-4. Hence, the Court should adopt DRI's proposed construction.

5.  **to assist in reducing any buildup of adhesive material on a cutting mechanism when the cutting mechanism subsequently cuts laterally across the media web** (claim 1)

| NCR's Proposed Construction | DRI's Proposed Construction |
|---|---|
| to have areas with and without adhesive to reduce any buildup of adhesive material on a cutting mechanism when the cutting mechanism subsequently cuts laterally across the media web | Indefinite, alternatively, the pattern provides (1) at least some adhesive and some adhesive free areas at every widthwise cut by the cutting mechanism, and (2) each portion of the cutting mechanism that contacts an adhesive free area will contact adhesive when the location of the |

19

|  | cutting mechanism is varied relative to the running axis of the substrate. |
|--|--|

The '190 patent provides no guidance whatsoever as to what particular pattern in claim 1 will meet the vague limitation of "to assist in reducing any buildup of adhesive material…." Col. 10, lns. 7-9 (A1312).  However, to the extent that this language does not render the claim invalid for indefiniteness and can be construed at all, it would have to be limited to the disclosed pattern that was discussed above in Section II.C(2).  The same construction proposed by DRI for that claim language should be applied here.

> 6.  **is of a shape which assists in evenly distributing any buildup of adhesive material on a surface of a printer** (claim 11)

| NCR's Proposed Construction | DRI's Proposed Construction |
|--|--|
| is of a shape which has areas with and without adhesive to approximately uniformly distribute over time any buildup of adhesive material on a surface of a printer | Indefinite, alternatively, the pattern provides (1) at least some adhesive and some adhesive free areas at every widthwise cut by the cutting mechanism, and (2) each portion of the cutting mechanism that contacts an adhesive free area will contact adhesive when the location of the cutting mechanism is varied relative to the running axis of the substrate. |

The '190 patent provides no guidance whatsoever as to what particular adhesive "shape" recited in claim 11 will meet the vague limitation of "assists in evenly distributing any buildup of adhesive material…." Col.10, lns. 65-66 (A1312).  However, to the extent that this language does not render the claim invalid for indefiniteness and can be construed at all, it would have to be limited to the disclosed pattern that was discussed above in Section II.C(2).  The same construction proposed by DRI for that claim language should be applied here.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should adopt DRI's proposed claim constructions.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                          By:  */s/ Philip A. Rovner*
                                          Philip A. Rovner (#3215)
Lester J. Savit                           Jonathan A. Choa (#5319)
ONE LLP                                   Hercules Plaza
4000 Mac Arthur Blvd.                     P.O. Box 951
East Tower, Suite 500                     Wilmington, DE  19899
Newport Beach, CA 92660                   (302) 984-6000
(949) 502-2870                            provner@potteranderson.com
                                          jchoa@potteranderson.com
John E. Lord
ONE LLP                              *Attorneys for Defendant*
9301 Wilshire Boulevard              *Documotion Research, Inc.*
Penthouse Suite
Beverly Hills, CA 90210
(310) 866-5157

Dated: May 14, 2015
1189831