IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NCR Corp.,                              )
                                        )
           Plaintiff,                   )
                                        )
     v.                                 )      Civil Action No. 14-395-GMS
                                        )
Documotion Research, Inc.,              )
                                        )
           Defendant.                   )
                                        )

## ORDER CONSTRUING THE TERMS OF
## U.S. PATENT NOS. 7,588,811; 7,820,264; 8,537,184; and 8,711,190

After considering the submissions of the parties and hearing oral argument on the matter,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of

U.S. Patent Nos. 7,588,811 ("the '811 patent"); 7,820,264 ("the '264 patent"); 8,537,184 ("the

'184 patent"); and 8,711,190 ("the '190 patent") [1]:

The '811 patent

1.    The term **"single column"** is construed to have its plain and ordinary meaning.[2]

---

[1] The court does not address the defendant's indefiniteness contentions at this time.

[2] The court adopts the plaintiff's proposed construction. The defendant asks the court to construe "single column" to mean "only one column." The defendant first points to dictionary definitions of "single" as "one and only one." (D.I. 60 at A-1424–25.) The defendant argues that the specification supports this definition because it does not include any embodiments with more than one column. The defendant also argues that the plaintiff disclaimed the presence of more than one column during prosecution. The defendant notes that the plaintiff amended the claim during prosecution to add the word "single," so the claim changed from being "a column" to "a single column." (D.I. 63 at 2.) The plaintiff also made statements to the examiner distinguishing the claim's single-column configuration from the *Mertens, Slagsvol,* and *Smith* prior art references, which included two columns of adhesive. (D.I. 63 at 2–3.)

In response, the plaintiff notes that the "single column" terms are preceded by the open terminology "comprising," "including," and "a," which do not foreclose the presence of another column. (D.I. 62 at 3.) *See SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1284 (Fed. Cir. 2005). The plaintiff argues that

2. The term **"single column . . . in a minor area of back surface"** is construed to mean "single column . . . in an area comprising less than 50% of the back surface."[3]

3. The term **"with the remaining major area of said back surface being devoid of adhesive"** is construed to mean "the remaining area of the back surface that does not have a column of patches has a total area that is more than 50% of the total back surface, and that remaining area is free of adhesive."[4]

---

the defendant ignores other definitions of single that support the plaintiff's construction, such as "individual, taken in isolation," or "consisting of a separate, unique whole." (D.I. 60 at A-1424–25.) Further, the plaintiff argues that the defendant misconstrues the prosecution history. According to the plaintiff, the patentee did not disclaim the presence of more than one column. When addressing the *Mertens* reference, the patentee used the term "single" to clarify that the adhesive patches and spaces were in the same column. (D.I. 69 at 4–5.) Regarding the *Slagsvol* reference, the patentee was not even referring to the claim language at issue here. Its statement "two does not anticipate one" referred to what is now claim 33, which implicitly requires only one column. (D.I. 69 at 5–7.) Finally, when addressing *Smith*, the patentee argued that *Smith* did not disclose alignment along one side of the web. (D.I. 69 at 7–8.)

The court agrees with the plaintiff and its characterization of the prosecution history. Thus, the court adopts the plaintiff's proposed construction.

[3] The court largely adopts the plaintiff's construction and amends it only for conciseness. The defendant proposes the construction, "the column of adhesive is located in an area that is less than one side of the longitudinal center line of the web's back surface." (D.I. 59 at 4.) The defendant starts by arguing that the "minor area" and "major area" in terms 2 and 3 describe a back surface that is divided into two areas, one that is smaller than the other. The defendant goes on to use the embodiment in Fig. 8 of the '811 patent (which shows the column of patches along one edge of the back surface) to support its use of the "longitudinal center line" limitation.

The court agrees with the plaintiff that this locational limitation is improper. Claim 2 of the '811 patent requires the patches to be "aligned along one lateral edge of said web." Claim 1, meanwhile, has no such locational requirement, and the specification does not support the defendants' center line limitation. To the extent that the defendant is asking the court to limit the claim to the Figure 8 embodiment, the court declines to do so. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.")

[4] The court does not fully accept the construction of either party for term 3. The defendant proposes the construction, "the web's back surface has an area that is more than one half of the back surface, opposite of the longitudinal center line from the minor area." (D.I. 59 at 6.) This again improperly imposes a center line limitation. *See supra* note 3.

Nonetheless, the court cannot adopt the plaintiff's proposed construction of "areas of the back surface that are free of adhesive which add up to more than half (i.e. more than 50%) of the back surface." (D.I. 59 at 6.) The plaintiff overreaches in arguing the major area requires only that areas without adhesive add up to more than half of the back surface. Contrary to the plaintiff's construction, the adhesive-free areas *within* the columns are not included in the "major area." As the defendants note, the plain reading of the claim indicates "the remaining major area" is a separate *area* from the area with the patches, rather than the

2

4. The term **"adhesive-free major area"** is construed to have its plain and ordinary meaning.[5]

5. The term **"devoid of adhesive"** is construed to have its plain and ordinary meaning.[6]

6. The term **"said labels extend transversely across said web in cantilever from said adhesive column to permit hand grasping of said adhesive-free major area"** is construed to mean "the labels extend from the adhesive patches across the web such that the adhesive-free major area may be grasped by hand."[7]

7. The term **"reducing surface area exposure along said feedpath"** is construed to mean "to reduce the overall surface area of adhesive exposed along the feedpath."[8]

---

total surface area without adhesive. The major area need not be contiguous, but it still must physically describe an adhesive-free area (or areas) distinct from the minor area, where one or more columns of patches are located.

[5] Both parties agree that the meaning of "adhesive-free major area" is the same as discussed in term 3, and the court construes it accordingly. *See supra* note 4.

[6] The defendant does not offer its proposed construction, "utterly lacking or completely without adhesive," because it disputes the plain and ordinary meaning of the term. Rather, the defendant requests the court to construe this term "to assure that the jury understands that 'devoid' emphasizes the absence of adhesive." (D.I. 63 at 6.) This is unnecessary. Where, as here, the meaning of a term is clear, the court need not provide additional construction. Persuasion and emphasis fall under the purview of the attorneys, not the court.

[7] The court reaches its own construction for this term in an attempt to describe the physical relationship embodied in "cantilever" in the simplest terms possible. Both parties agree that this term describes the way the labels extend from the adhesive patches across the web. The plaintiffs propose the construction, "the labels extend from the adhesive patches such that the adhesive is biased more towards one lateral edge of the web than the other edge from said adhesive column to permit hand grasping of said adhesive-free major area." (D.I. 59 at 10–11.) The defendants propose the construction, "at least the portion of the web across the center-line from the single column is free from adhesive to allow the label to be held without contacting adhesive." (D.I. 59 at 10–11.)
The court finds that the plaintiff's proposed construction would confuse the jury. Additionally, the plaintiff's construction is redundant. It restates the earlier part of the claim, which describes the location of the patches as closer to one lateral edge of the web than the other. For the defendant, it was clear from the briefing and oral arguments that its construction would require "the portion of the label containing the adhesive must be attached to an object, and the portion without the adhesive *to project beyond the object* for grasping by a hand." (D.I. 63 at 7 (emphasis added).) The intrinsic record does not require this limitation.

3

The '264 Patent

8. & 9. The terms "**an identically repeating series of differently sized adhesive patches**

**. . . aligned in a column along said web**" and "**and differently sized adhesive free**

**zones therebetween aligned in a column along said web**" are construed together to

mean "an identically repeating series of adhesive patches of different relative sizes

and adhesive-free zones of different relative sizes between the patches aligned in the

same column along said web."[9]

---

[8] Again, the court does not adopt the construction of either party. The ambiguity in this term arises because it is not clear from the claim alone what "surface area exposure" means or how it is reduced. The defendant proposes the construction "the single column of adhesive patches is located on one side of the longitudinal center of the web surface, and the other side of the longitudinal center contains no adhesive." (D.I. 59 at 12.) This construction fails for two reasons. First, it does not explain what "surface area exposure" means. Second, it again improperly imports a longitudinal-center limitation into the claim where there is no basis for it in the intrinsic record. *See supra* note 4.

The plaintiff argues for the construction "having areas with and without adhesive to reduce surface area exposure." (D.I. 59 at 12.) The plaintiff explains that the specification teaches an invention which reduces the surface area of printer components exposed to adhesive by having areas with and without adhesive. (D.I. 62 at 8.) The court agrees with the plaintiff's arguments, but has issues with its proposed construction. First, the construction is redundant in the context of the claim because "areas with and without adhesive" is implicit in the claim's discussion of "a plurality of noncontiguous adhesive patches." (*See* D.I. 60 at A-11, 7:54–55.) Second, the plaintiff's construction also does not clearly explain what "surface area exposure" refers to. The court's construction aims to explain the meaning of this term in the context of the specification.

[9] The court construes terms 8 and 9 together to promote conciseness. Both parties agree that this claim contemplates more than one column. The dispute is whether the "differently sized adhesive patches" need to be in the same column, or whether they may be in different columns. Combined, the plaintiff's construction for terms 8 and 9 is "an identically repeating series of adhesive patches of different sizes relative to each other and adhesive free zones of different sizes relative to each other between the adhesive patches aligned in a column along said web." (D.I. 59 at 14–15.) The defendant's combined construction is "the adhesive patches within a single aligned column along the longitudinal axis of the web have a repeating pattern with at least two patches in that column having a different size from one another, and at least two different distances of adhesive free spaces separating the patches in that column." (D.I. 59 at 14–15.) The court largely agrees with the defendant's construction, but rejects the defendant's repeated effort to improperly import a longitudinal axis limitation that has no basis in the claim language. *See supra* note 3. A plain reading of the claim indicates the differently-sized adhesive patches and adhesive-free zones are in the same column.

The plaintiff, meanwhile, argues that the differently sized patches can be in different columns. The argument centers on a portion of the specification that says "the series of adhesive patches in each label have different lengths." '264 patent at 6:55–59. The plaintiff contends this means "the adhesive patches may differ in size or surface area within a particular label, rather than confining the differences to different

4

10. The term **"said adhesive patches vary in width between leading and trailing edges thereof along said running axis"** is construed to mean "the patches are not of uniform width between the leading and trailing edges thereof along said running axis."[10]

11. The term **"index marks"** is construed to mean "physical indicator."[11]

---

patches within a single column of adhesive." (D.I. 62 at 10.) The court disagrees. The specification does not support the plaintiff so clearly. First, it says *the series* of adhesive patches have different lengths, which could mean that the patches within a series, or column, have different lengths. Second, as the defendant notes, this portion of the specification points to Fig. 4, which depicts differently-sized patches and spaces within the *same* column. Combined with the plain reading of the claim, the specification strongly points to the court's construction.

The plaintiff also argues that adopting a construction that requires the differently-sized patches to be in the same column would exclude the embodiment depicted in Fig. 8. Although the court agrees that a proper construction should not exclude preferred embodiments, claim 1 does not read on Fig. 8. Fig. 8 only includes adhesive patches and adhesive-free zones of uniform size. It is not an example of differently-sized patches in different columns.

[10] The conflict here centers on the meaning of "vary in width between." The defendant contends that the leading and trailing edges must have different widths. The plaintiff argues that it is the portion of the patches *between* the leading and trailing edges that must vary in width. The court adopts the plaintiff's construction.

The defendant first notes that Figs. 5–8 of the '264 patent are embodiments wherein the leading and trailing edges have different widths. Further, the specification refers to "varying width of the leading and trailing edges of the adhesive patches." (J.A. A496 at 7:30–91) The plaintiff responds that this portion of the specification does not teach that the leading and trailing edge must have different widths, but that gradually increasing and then decreasing the width of the patch can be used to decrease adhesive buildup. (D.I. 69 at 13.)

The defendant next argues that the width varies between two *edges*, not between two *points*. By this logic, a circular patch contains only curved leading and trailing edges and no portion between them. The plaintiff argues that this interpretation improperly excludes Fig. 4 (which depicts circular patches) and contradicts the unambiguous language of the term. The court agrees. Although the defendant's argument regarding curved edges is persuasive, the specification clearly refers to Figure 4 as an example when it discusses how the adhesive patches "preferably vary in lateral width between the leading and trailing edges thereof." '264 patent at 6:64–7:4.

[11] The construction the court chooses is intended to provide a broad definition of this claim term without expanding beyond what is supported by the intrinsic record. The patent states that index marks "may have any conventional configuration such as the short black marks illustrated . . . or may even be in the form of gaps or holes through the web." '264 patent at 3:56–67. The plaintiff requests the definition "marks or other indicator intended to be read by an optical or other sensor," while the defendant asks for the plain and ordinary meaning. (D.I. 59 at 18)

The plaintiff's proposed construction overreaches the bounds of the patent. During oral argument, it became clear that the dispute between the parties centers on whether an "index mark" can include an adhesive-free zone, or a "gap" in the adhesive. *See* Transcript of *Markman* Hearing ("Tr.") 49:23–57:6.

The '184 Patent

12. & 13. The terms **"the adhesive layer is variably patterned"** and **"to include areas**

**with adhesive and areas without adhesive to vary locations of contact between**

**the adhesive layer and a cutting mechanism making variably located lateral cuts**

**across width of the substrate"** are construed together to mean "the adhesive layer

is patterned to have areas with adhesive and areas without adhesive. The pattern is

such that as a cutting blade makes widthwise cuts along the running axis of the

substrate, the portions of the blade that contact adhesive will vary.[12]

---

This stands in contrast to a gap *through* the web, which is included in the patent's definition of index mark. The plaintiff claims the patentee acted as its own lexicographer. But the patentee did not provide a definition expansive enough to cover a space without adhesive. An index mark may be broadly defined, but it must be some type of physical indicator. The *absence* of a mark cannot be an index mark.

[12] The parties submitted terms 12 and 13 separately for construction. In the context of the patent, the court is unable to separately construe these terms in any meaningful way. After reading the parties' briefs and listening to oral arguments, the court finds it necessary to provide its own construction for these terms. Both the plaintiff and the defendant offer constructions that are unartful, unhelpful, and confusing.

Claim 1 of the '184 patent reads, in relevant part, "wherein the adhesive layer is variably patterned to include areas with adhesive and areas without adhesive to vary locations of contact between the adhesive layer and a cutting mechanism making variably located lateral cuts across width of the substrate." '184 patent at 9:63–67.

The plaintiff offers constructions for terms 12 and 13 which, read together, are either redundant or read out the term "variably." For term 12, the plaintiff offers the construction "patterned such that the cutting blade surface may come into contact with adhesive at different locations over time as the cutting blade makes repetitive cuts." (D.I. 59 at 20.) For term 13, the plaintiff offers the construction "to include areas with adhesive and areas without adhesive to provide different transverse points of contact between the adhesive layer and a cutting mechanism making lateral cuts across the width of the substrate that occur at different locations relative to a repeat length of the adhesive pattern." (D.I. 59 at 21.) In the context of the claim, the plaintiff's constructions together would read:

The adhesive layer is patterned such that the cutting blade may come into contact with adhesive at different locations over time as the cutting blade makes repetitive cuts to include areas with adhesive and areas without adhesive to provide different transverse points of contacts between the adhesive layer and a cutting mechanism making lateral cuts across the width of the substrate that occur at different locations relative to a repeat length of the adhesive pattern.

This construction borders on nonsensical. Essentially, the plaintiff's definition for term 12 overlaps with term 13—both describe the blade coming into contact with adhesive at different locations. This implicitly argues that term 13 defines term 12, "variably patterned." The repetitive, cumbersome, and confusing nature of this construction highlights the problem with treating terms 12 and 13 separately. The

6

14.    The term **"variably located lateral cuts"** is construed to mean "lateral cuts that occur at different locations relative to a repeat length of the adhesive pattern."[13]

15.    The term **"the areas without adhesive comprise adhesive free lanes arranged vertically and/or horizontally within the adhesive layer"** is construed to have its plain and ordinary meaning.[14]

---

defendant's argument that the plaintiff's construction reads out the claim limitation "variably patterned" is not without merit. (D.I. 68 at 12.) It is meaningless for terms 12 and 13 to have the same definition.

But the court cannot adopt the defendant's construction either. For term 12, the defendant offers the construction "a wide web of media containing multiple, different patterns, or a single pattern that has a variable repeat length." (D.I. 59 at 20.) For term 13, the defendant offers, "the pattern provides (1) at least some adhesive and some adhesive free areas at every widthwise cut by the cutting mechanism, and (2) each portion of the cutting mechanism that contacts an adhesive free area will contact adhesive when the location of the cutting mechanism is varied relative to the running axis of the substrate." (D.I. 59 at 21.) Unlike the plaintiff's constructions, the defendant's constructions are internally consistent without being redundant. The defendant's greatest flaw is that its construction ignores the context of the rest of the patent.

The defendant's construction excludes the embodiment in Fig. 1B, which is a single pattern without a variable repeat length. This embodiment is clearly covered by claim 4, a dependent claim that relates back to claim 1. The court cannot construe the terms in a way that would read out embodiments, let alone an entire claim.

Since the defendant's proposal must be rejected, the court is left with the task of defining term 12, which seems to already be defined or clarified by term 13, the second half of the claim. In such a situation, the court would normally give term 12 its plain and ordinary meaning, but the conflict and confusion between the parties makes it clear this would not suffice. Instead, the court has chosen to construe the two terms as one. This provides a more reasonable explanation of the patentee's intent and hopefully will aid the jury in understanding this claim.

[13] The parties are not far apart in their proposed constructions. The plaintiff construes this term to mean "lateral cuts that occur at different locations relative to a repeat length of the adhesive pattern, while the Defendant proposes "lateral cuts that occur randomly along the running axis of the substrate over time." (D.I. 59 at 22.) Both the plaintiff and defendant agree that the cuts occur based on "transactions/receipt details" or "printer control logic." '184 patent at 3:64–67. During oral argument the defendant voiced a concern that the plaintiff's construction expands the claim to include labels with gaps or index marks. Tr. at 85:18–87:9. The court finds that this term is only focused on whether the cuts can occur at any point in the label. The claim may include labels with gaps or index marks, as long as the cuts do not occur based on those gaps or index marks but instead on "transactions/receipt details" or "printer control logic." This is reflected in the plaintiff's proposed construction, which the court adopts.

[14] The defendant proposes the construction "the adhesive layer in a wide web additionally contains vertical or horizontal lines that do not contain adhesive." (D.I. 59 at 22–23.) It argues the construction "is necessary to clarify for the jury that the adhesive-free lanes are located between the patterns on a wide web, and are not the adhesive free areas of the patterns themselves." (D.I. 63 at 14.) The court agrees with the plaintiff, which argues that this claim is clear and does not require the "wide web" limitation.

16. The term **"elongated diamond shapes"** is construed to have its plain and ordinary meaning.[15]

17. The term **"repeat length"** is construed to mean "the shortest distance along the web in which the adhesive pattern is repeated."[16]

18. The term **"a label configured to be custom cut from the roll of the media by a thermal at custom lengths"** is construed to mean "a label configured to be cut by a thermal printer at any location along the web to form a label of any length."[17]

19. The term **"the front portion displaying information for a transaction"** is construed to have its plain and ordinary meaning.[18]

---

[15] The court agrees with the plaintiff that this term should be given its plain and ordinary meaning. The defendant seeks to limit this term to "diamond-shaped patches that have been stretched along the top to bottom axis between the top and bottom points relative to the side-to-side points, or stretched along the side-to-side axis between the side points relative to the top and bottom points." (D.I. 59 at 23–24.) Because the court finds the defendant's verbose definition of "elongated" unnecessary, the only meaningful dispute centers on whether the diamond shapes must be discrete patches. The court is not convinced that either the plain language of the claim or the specification requires the diamond shapes be patches. Additionally, the patent refers to the left four configurations of Fig. 1H as "variations on diamond shaped adhesive." '184 patent at 7:20–21. These patterns, which do not have discrete patches, appear to fall within this claim language.

[16] Both parties agree that a "repeat length" is the distance along the web in which the adhesive pattern is repeated, but dispute whether this can include multiple "unit lengths" of the pattern. The court agrees with the Defendant that repeat length should not include multiple repeats of the same pattern.

[17] The parties agreed on the court's proposed construction during the *Markman* Hearing. Tr. at 103:19–105:12.

[18] The court finds that a juror would understand the plain and ordinary meaning of this term. The defendant instead proposes the construction, "the label has been printed with information that is visually displayed." (D.I. 59 at 26.) The claim states the label will display "information for a transaction when the ink is activated by the thermal printer." '184 patent at 10:48–50. Contrary to the defendant's assertions, this denotes capability, not a requirement that information be printed on the label before the claim language is satisfied.

The '190 Patent

20. The terms **"pattern for adhesive material"** and **"adhesive pattern"** are construed
   to have their plain and ordinary meaning.[19]

21. The term **"repeat distance"** is construed to mean "the shortest distance along the web
   in which the adhesive pattern is repeated."[20]

22. The term **"providing the pattern and the repeat distance to a printing press or a
   coater"** is construed to have its plain and ordinary meaning.[21]

23. The term **"providing the pattern and the repeat distance to a printing press or a
   coater, wherein the printing press or the coater (i) coats a first side of a web of
   media with thermally sensitive inks"** is construed to mean "the printing press or
   coater that receives the pattern and repeat distance is the same printing press or coater
   that conducts the coating steps."[22]

---

[19] The court rejects the plaintiff's proposed construction; "configuration of adhesive wherein the
web comprises a plurality of transverse areas with and without adhesive." (D.I. 509 at 27.) The plaintiff
seems to believe that "pattern" is a highly complicated term of art. The plaintiff claims the patentee acted
as its own lexicographer when it stated that the benefits of the patent could be obtained "by patterning the
adhesive in a certain matter." (D.I. 62 at 19; '190 patent at 3:63–66.) The court disagrees. The portions of
the specification the plaintiff cites provide examples of patterns, but do not define "pattern" in this limited
way. The plain and ordinary meaning should apply here.

[20] The court construes this term consistently with term 17. *See supra* note 16.

[21] The court ruled on this term from the Bench. Tr. at 109:11–111:9.

24. The term **"to assist in reducing any buildup of adhesive material on a cutting mechanism when the cutting mechanism subsequently cuts laterally across the media web"** is construed to mean "to create a pattern that reduces the buildup of adhesive material on a cutting blade when the cutting blade subsequently cuts laterally across media web."[23]

25. The term **"is of a shape which assists in evenly distributing any buildup of adhesive material on a surface of a printer"** is construed to mean "is of a shape

---

[22] The court adopts the defendant's construction. The plaintiff argues for plain and ordinary meaning—more specifically, that more than one printing press or coater may perform the recited steps. To support its argument, the plaintiff points to the open claim language "comprising" as well as language in the specification that states that the "printing press or coater, may, then, apply a thermally sensitive coating to the first side of the media and/or . . . coat a second side of the media." (D.I. 69 at 20.) *See* '190 patent at 9:20–22. The plaintiff's argument based on open claim language fails because of the closed article "the." As the defendant argues in its brief, when the claim refers to "**the** printing press or **the** coater," its antecedent basis is "**a** printing press or **a** coater." (D.I. 63 at 19.) This indicates the printing press or coater referred to in the second instance must be the same as the first printing press or coater. *See, e.g., Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356–57 (Fed. Cir. 1999) ("It is clear from the language of the claim itself that the term "a discharge rate" in clause [b] is referring to the same rate as the term "the discharge rate" in both clauses [b] and [d] . . . In addition, that conclusion avoids any lack of antecedent basis problem for the occurrence of "the discharge rate" in clause [d].") There may be more than one printing press or coater, but this term requires that the printing press or coater that receives the pattern must also perform the coating steps.

[23] Both parties' constructions are very similar (or in the defendant's case, identical) to those for term 13. Term 24 lacks several elements found in term 13. First, term 13 discusses "areas with adhesive and areas without adhesive." Second, term 13 requires varied locations of contact between adhesive and the cutting mechanism. Third, term 13 mentions "variably located lateral cuts." None of these limitations from claim 1 of the '184 patent are found here, in claim 1 of the '190 patent.

The defendant's construction fails entirely because it only focuses on the second element, i.e. varied locations of contact between the adhesive and the cutting mechanism. The plaintiff's construction, on the other hand, incorporates the first element, "areas with and without adhesive." The plaintiff's construction is correct in spirit. In the context of this patent, term 24 explains that the configuration of the adhesive pattern reduces adhesive buildup on the cutting blade. The court's construction focuses on this without improperly importing language from the '184 patent.

which has areas with and without adhesive to approximately uniformly distribute over time any buildup of adhesive material on a surface of a printer."[24]

Dated: November _5__, 2015

UNITED STATES DISTRICT JUDGE

---

[24] The defendant provides the same construction for this term as it did for terms 13 and 24. The court rejects this construction because it does not take into account differences between these terms. *See supra* note 23. Similar to term 24, the plaintiff's construction imports the limitation "areas with and without adhesive," which is not found in the claim. The court adopts the plaintiff's construction nonetheless because there does not seem to be a better one available. Even though "areas with and without adhesive" is not explicitly found in the claim, the phrase is necessary to add meaning to "shape."